## UNITED STATES DISTRICT COURT
## DISTRICT  OF  CONNECTICUT

UNITED STATES OF AMERICA        :
                                :                    Criminal
v.                              :                    NO: 3:05cr261 (MRK)
                                :
CARLOS F. RIVERA                :
                                :

## RULING AND ORDER

In this case, the Defendant Carlos Rivera is charged in a Second Superceding Indictment with several offenses of a sexual nature that are alleged to have involved minors and child pornography. Specifically, Mr. Rivera  is charged with two counts of using the internet to entice a minor to engage in illegal sex with him, one count of interstate travel for the purpose of engaging in illicit sexual conduct with a minor, one count of production of child pornography, and one count of possession of child pornography.  Before trial, Mr. Rivera filed a Motion to Suppress Defendant's Statements [doc. # 51], in which he sought to suppress statements that he had made to police officers during an interrogation following his arrest on December 7, 2004.  The Court held an evidentiary hearing on the motion on July 6, 2006.  On July 7, 2006, the Court issued an oral order [doc. # 76] denying  the Motion to Suppress Defendant's Statements.  However, the Court stated that it would later issue a written ruling explaining the basis for its decision.  This is that ruling.

### I.

As is relevant to the suppression motion, the facts revealed at the evidentiary hearing are as

1

follows.[1]   Prior to Mr. Rivera's arrest, Detective Michael Twomey of the Fairfax County Police Department in Fairfax, Virginia, was investigating allegations that a minor from Nebraska had been sexually abused while visiting the Washington, D.C. area.   Detective Twomey's investigation led him to Mr. Rivera, who lived in New Haven, Connecticut.   On December 7, 2004, at approximately 6:30 a.m., officers from the New Haven Police Department and the Federal Bureau of Investigation executed search and arrest warrants at Mr. Rivera's home in New Haven.   Detective Twomey observed the execution of the warrants.   Mr. Rivera was taken to police headquarters and placed in a holding cell, where he was kept before being escorted to an interrogation room.   While in the cell, Detective Twomey observed Mr. Rivera praying and asked if he was all right.   Mr. Rivera responded that he was.

Detective Twomey conducted the interrogation, which began at approximately 7:50 a.m., because the alleged sexual abuse had occurred in Virginia.   Two New Haven police officers were present during the interrogation, Detective Christine Hanna (then, Perrotti) and Detective Keith Wortz.   Detective Hanna took notes.   Detective Twomey, who is an 18-year veteran of the Fairfax County Police Department, testified that in accordance with his usual practice, he used a Fairfax County Police Department Warning and Consent Form (PD 88) to advise Mr. Rivera of his rights. The form that Detective Twomey used during Mr. Rivera's interrogation was marked as Exhibit 1 at the hearing.   According to Detective Twomey, he showed the form to Mr. Rivera while the Detective recited each of the rights listed on the form.   After reading each right, Detective Twomey asked Mr. Rivera if he understood the right just recited.   The rights listed on the form are as follows:

---

[1]   The witnesses at the evidentiary hearing were Detective Michael Twomey, Detective Christine Hanna, *née* Perrotti, and the Defendant Carlos Rivera.

1.    I have the right to remain silent.  I am not required to say anything to anyone at any time or to answer any questions.
2.    Anything I do or say can and will be used against me in a court of law.
3.    I have the right to talk to a lawyer before being questioned and I also have the right to have the lawyer with me while being questioned.
4.    If I cannot afford a lawyer, and want one, one will be provided for me.
5.    If I want to answer questions now without a lawyer present, I will still have the right to stop answering questions at any time.  I also have the right to stop answering questions at any time if I want to talk to a lawyer.

Exhibit 1.  Detective Twomey testified that Mr. Rivera was listening when the rights were read to him and responded "Yes," that he understood each of the rights after Detective Twomey read them to him.  *Id.*  Also in accordance with his usual practice, Detective Twomey put his initials on the form once he had recited each right and Mr. Rivera had responded that he understood the right.  According to Detective Twomey, in accordance with his custom in such situations, he would not have moved on to the next right unless Mr. Rivera had responded that he understood the right that was just read to him.

Detective Twomey testified that (once again, in accordance with his customary practice) he then asked Mr. Rivera to place his initials next to each of the rights that he had read just to him and also to sign the "Consent to Speak" portion of the form, which reads as follows:

I know what my rights are. I am willing to make a statement without a lawyer present.  I understand and know what I am doing.  No promises or threats have been made to me by anyone.

*Id*.  According to Detective Twomey, Mr. Rivera said that he would not sign the form or place his initials on it, but that he was willing to speak with the officers.  Detective Twomey also testified that this sort of reticence was not unusual in his experience, since, as he testified, some individuals are willing to speak to the police but are not willing to sign anything.  Detective Twomey placed the word "Refused" on the signature line of the "Consent to Speak" box, which, the Detective testified,

meant that Mr. Rivera had declined to sign the form, even though he was willing to speak with the officers. Detective Twomey's police report, which he completed on the day following the interrogation and which was attached to the Government's Memorandum in Opposition to Motion to Suppress [doc. # 60], is consistent with the version of events Detective Twomey provided at the hearing. In particular, the police report reads as follows:

> Rivera was advised of his rights using the standard Fairfax County Police Department's Warning and Consent form labeled PD88. This form was read to Rivera and he advised that he understood his rights by answering, "Yes" after being asked if he understood to each of the (5) five listed rights.
> Although he verbally indicated that he understood, Rivera refused to sign the form and initial next to each right after being asked to do so.

Exhibit A to Government's Memorandum in Opposition to Motion to Suppress [doc. # 60].

Detective Twomey testified that he had no doubt whatsoever that Mr. Rivera clearly understood his rights and was willing to waive them and to speak with the officers. He said that Mr. Rivera was not handcuffed at any point while in the interrogation room. Mr. Rivera never asked to speak with a lawyer, never asked to stop the conversation, and never said he was uncomfortable with the interrogation. According to Detective Twomey, if Mr. Rivera had indicated any unwillingness to speak with the officers or any desire to speak with a lawyer, Detective Twomey would have stopped the interview immediately. Detective Twomey also testified that no threats or promises were made to Mr. Rivera during the interrogation and that the police did not yell at Mr. Rivera, nor raise their voices during the interrogation. Detective Twomey moreover testified that Mr. Rivera was generally calm and subdued, except at one point when he appeared to become angry in describing his disappointment in the outcome of the sexual encounter in Virginia.

The interrogation lasted approximately two hours, during which Mr. Rivera confessed to sexual acts with a minor in Virginia. His confession was generally consistent with the version of

events that the alleged victim had previously provided to investigators.

Detective Twomey testified that at the start of the interrogation, he informed Mr. Rivera of the nature of the charges against him (carnal knowledge with a minor) and, although he did not mention the applicable penalties, he did tell Mr. Rivera that the charges were serious. Detective Twomey also said that he told Mr. Rivera generally what the minor had alleged Mr. Rivera had done to him. Late in the interrogation, Detective Twomey told Mr. Rivera that this was his chance to tell his side of the story, since the victim had portrayed him as "a monster."

Detective Hanna, who was present during the interrogation, confirmed Detective Twomey's testimony – in particular, that Detective Twomey read each of the rights listed on the form to Mr. Rivera, that Mr. Rivera indicated he understood each right after it was read to him, and that Mr. Rivera declined to sign or initial the form but stated that he was willing to speak with the officers. She also confirmed that no threats were made to Mr. Rivera and that the police did not use raised voices during the course of the interrogation.

Like Detective Twomey, Detective Hanna testified that she had no doubt at all that Mr. Rivera heard his rights recited to him, understood his rights, and was willing to waive them and speak with the officers. Detective Hanna said that the notes she made during the interrogation do not indicate anything about the reading of rights to Mr. Rivera, but rather focused on the statements of Mr. Rivera. Detective Hanna's testimony about the interrogation diverged from Detective Twomey's only in two respects. First, she did not remember Mr. Rivera as calm and subdued but rather, as fairly agitated and angry. She also did not recall hearing Detective Twomey say that Mr. Rivera would be portrayed by the victim as "a monster" if Mr. Rivera did not tell his side of the story.

Mr. Rivera testified at the evidentiary hearing and also submitted an affidavit in support of his motion. In his testimony at the hearing, Mr. Rivera categorically denied that Detective Twomey ever read the rights on the form. According to Mr. Rivera, no one ever went over his rights with him. However, in his affidavit, Mr. Rivera merely stated that he "did not recall the officers reading the form to me." Affidavit of Carlos Rivera, attached to Motion to Suppress Defendant's Statement [doc. # 51].

Furthermore, Mr. Rivera testified that Detective Twomey had a form with him and in fact, Mr. Rivera recalled Detective Twomey showing him the form and asking him to read a portion of it. He also recalled telling Detective Twomey that he would not sign anything and denied ever stating that he was willing to speak with the officers. He also denied that he was aware of his right to remain silent or to counsel or any of the other rights listed on the form. However, Mr. Rivera acknowledged that he had been arrested by New Haven police for a similar crime in 1994. He also acknowledged that a transcript of his interrogation at that time shows that he was advised of each of his *Miranda* rights, and that he had decided nonetheless to waive his rights and give a statement to the police. *See* Exhibit B to Government's Memorandum in Opposition to Motion to Suppress [doc. # 60]. Mr. Rivera also admitted that he received a court-appointed lawyer to represent him in connection with that case.

According to Mr. Rivera, he felt apprehensive during Detective Twomey's interrogation and felt that he had no control. When asked why he answered the officers' questions, even though he claimed to be unwilling to speak with them, Mr. Rivera said that the answers just "popped out." He acknowledged that no one ever yelled at him, made any threats, or "abused" him. He also concedes that he never asked to speak with a lawyer, never asked to stop the interrogation, and never indicated

that he was uncomfortable with the interrogation.  Mr. Rivera testified that he can read English, that

he was not on medication, and that he had not taken any alcohol immediately preceding the time of

the interrogation.  However, he said that he suffers from an anxiety disorder, that he had stopped

taking anxiety medication several years before because he could not afford it, that he felt

apprehensive during the interrogation, and that he was shaking because he was apprehensive.  Mr.

Rivera claimed that he told Detective Twomey he suffered from anxiety.  Detective Twomey could

not recall Mr. Rivera saying that he suffered from anxiety, although he also would not deny that

being said.

## II.

As Judge Friendly has instructed, whether this Court must suppress Mr. Rivera's statements

to police "divides itself into three sub-issues:"

(1)     Was [Mr. Rivera] warned concerning his rights in accordance with *Miranda*

[*v. Arizona*, 384 U.S. 436 (1966)]?

(2)     Did he understand what his rights were?

(3)     Did he voluntarily waive them?

*United States v. Hall*, 724 F.2d 1055, 1059 (2d Cir. 1983).  The Government bears the burden of

proving each issue by a preponderance of the evidence.  *United States v. Jaswal*, 47 F.3d 539, 542

(2d Cir. 1995). While the Government must prove that a defendant knowingly and voluntarily

waived his rights, a waiver need not be in writing or even express.  Instead, "in at least some cases

waiver can be clearly inferred from the actions and words of the person interrogated." *North

Carolina v. Butler*, 441 U.S. 369, 373 (1979); *see United States v. Rubio*, 709 F.2d 146, 152-53 (2d

Cir. 1983).

**Was Mr. Rivera Advised Of His *Miranda* Rights?**

This issue largely boils down to the credibility of Detectives Twomey and Hanna vis-à-vis Mr. Rivera, since if the officers are believed, Mr. Rivera was clearly advised of his *Miranda* rights, and if Mr. Rivera is believed, he clearly was not.  The Court found the testimony of Detectives Twomey and Hanna to be credible.  Conversely, the Court did not find Mr. Rivera's testimony to be credible.  The Court therefore finds that Mr. Rivera was advised of his *Miranda* rights.

The Court chooses to credit the testimony of Detectives Twomey and Hanna, over that of Mr. Rivera, for several reasons.  First, Detectives Twomey and Hanna were both forthright in their testimony and showed no hesitation in reciting the events surrounding the interrogation.  They also corroborated each other's testimony on this issue.  Second, it is implausible that experienced police officers like these would commence a formal interrogation of Mr. Rivera without going over his rights.  Third, Mr. Rivera himself admitted that Detective Twomey had a form with him and indeed asked Mr. Rivera to sign it.  There would be no reason for Detective Twomey to have the Fairfax Police department form with him and to ask Mr. Rivera to sign it without also reciting the rights on the form.  Fourth, Detective Twomey's initials appear next to each of the rights, in accordance with his customary practice, further corroborating his account of the reading of the rights to Mr. Rivera.  Fifth, although at the hearing Mr. Rivera denied ever being read his rights by Detective Twomey, Mr. Rivera did not so aver in the affidavit he submitted with his suppression motion.  In that affidavit, Mr. Rivera merely stated that he did not recall the officers reading him his rights.  Also in that affidavit, Mr. Rivera made and initialed a correction to the jurisdiction of the officers who had arrested him, and therefore Mr. Rivera clearly read his affidavit carefully before submitting it to this Court.  In light of these reasons, the Court did not find credible Mr. Rivera's denial at the hearing that

the officers had ever advised him of his rights.  Accordingly, the Court finds that the Government has proved by a preponderance of the evidence that Mr. Rivera was advised of his *Miranda* rights before the interrogation began.

### Did Mr. Rivera Understand His Rights?

Here, too, the issue devolves into one of credibility.  Mr. Rivera claims not to have understood his rights.  Yet, Detectives Twomey and Hanna both credibly testified that Mr. Rivera stated after each right was read to him that he understood each right.  Once again, the warning and consent form confirms the testimony, for Detective Twomey testified that his customary practice was that he would not place his initials next to each right on the form until the defendant acknowledged that he understood the right.  While Mr. Rivera also claims not to have understood his rights, the Court does not find Mr. Rivera's denial credible. Mr. Rivera was not "a newcomer" to the criminal justice system, to interrogation, or to *Miranda* warnings.  *See Hall*, 724 F.2d at 1059 ("[T]here is force in the [trial] judge's observation that Hall knew his rights all along since he was not 'a newcomer to the law' . . . and, more important, no newcomer to the jurisprudence of *Miranda*."). The transcript from a prior arrest shows that he had been read each of his *Miranda* rights and that he informed the officers that he understood those rights.  Exhibit B to Government's Memorandum in Opposition to Motion to Suppress [doc. # 60] (Officer: "Can you read this uh first sentence to me on the tape, speaking up when you read?  Mr. Rivera: This one.  I have the right to remain silent."); *id.* (Officer: "Do you understand you have the right to remain silent? Mr. Rivera: Yeah.").  Mr. Rivera had also received a court-appointed attorney in connection with his prior arrest, and therefore, he certainly knew that he could be given an attorney, even if he could not afford one.  Moreover, Mr. Rivera is fluent in English, and the Court found him to be intelligent and well-spoken.  Accordingly,

9

the Court finds that the Government has proved by a preponderance of the evidence that Mr. Rivera was not only read his rights, but understood them.

### Did Mr. Rivera Voluntarily Waive His Rights?

"A voluntary relinquishment of a right occurs when the relinquishment is the 'product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Male Juvenile*, 121 F.3d 34, 41 (2d Cir. 1997) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Whether a defendant has voluntarily waived his constitutional rights ultimately depends upon the totality of circumstances. *See, e.g.*, *Parsad v. Greiner*, 337 F.3d 175, 183 (2d Cir. 2003); *United States v. Gaines*, 295 F.3d 293, 297-98 (2d Cir. 2002); *Tankleff v. Senkowski*, 135 F.3d 235, 244-45 (2d Cir. 1998); *Male Juvenile*, 121 F.3d at 40; *United States v. Anderson,* 929 F.2d 96, 99 (2d Cir. 1991). Each case rests on its own facts. Relevant factors include the conduct of the police, the conditions in which the defendant was interrogated, the defendant's age, intelligence and education, the existence of any language barriers, the time between the arrest and interrogation, and the defendant's prior experience with law enforcement. *See, e.g.*, *Anderson,* 929 F.2d at 99 (looking to defendant's prior experiences with police, the conditions of the interrogation, and the conduct of police); *Parsad,* 337 F.3d at 183 (looking to the accused's characteristics, the conditions of the interrogation, and police conduct); *United States v. Lynch*, 92 F.3d 62, 65 (2d Cir. 1996) ("The fact that [the defendant] made his statements more than two hours after his arrest suggests that he had time to reflect upon his situation and that he freely chose to waive his rights and to speak with [the police]."); *United States v. Ruggles*, 70 F.3d 262, 265 (2d. Cir. 1995) (stating that "there is nothing in the record to indicate that [the defendant] lacks maturity, education or intelligence; he was twenty-eight years old at the time of questioning. He was familiar with his Miranda rights, including

10

the right to remain silent."); *Jaswal,* 47 F.3d at 542 (upholding the district court's finding of a valid waiver in part because "the defendants were found to have a reasonably good command of the English language"); *United States v. Todisco*, 667 F.2d 255, 260 (2d Cir. 1981) (defendant's in-court behavior supported trial court's finding that defendant understood Miranda rights read to him in his non-native language).   Whether Mr. Rivera voluntarily waived his rights is a somewhat closer question than the prior two.   Nonetheless, the Court is persuaded that the Government has shouldered its heavy burden on this last issue as well.

Several facts make this a somewhat closer question.  First, there is no written waiver, nor was the interrogation transcribed or taped.  Therefore, there is no written or transcribed express statement from Mr. Rivera confirming his waiver of his rights, as there was, for example, with his prior arrest. *See* Exhibit B to Government's Memorandum in Opposition to Motion to Suppress [doc. # 60]. However, while a court must begin with the presumption that a defendant did not waive his rights, there is no requirement that a defendant waive his rights in writing.  *Butler*, 441 U.S. at 376 ("The Courts of Appeals have unanimously rejected the . . . argument that refusal to sign a written waiver form precludes a finding of waiver."); *United States v. Spencer*, 995 F.2d 10, 12 (2d Cir. 1993) (holding that defendant's statement that he "was prepared to answer [the interrogators'] questions to the best of his ability," notwithstanding his refusal to sign the waiver form, was a sufficient waiver); *United States v. Boston*, 508 F.2d 1171, 1175 (2d Cir. 1974) ("It is clear, in any event, that a written waiver is not required.").  An oral waiver will suffice.  *See, e.g.*, *Butler*, 441 U.S. at 376; *Spencer*, 995 F.2d at 12.  Nor need the waiver be express.  *See, e.g.*, *Butler*, 441 U.S. at 373; *United States v. Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990) ("While merely answering questions after Miranda warnings have been given does not necessarily constitute a waiver, no express statement of waiver

is required."); *United States v. Tutino*, 883 F.2d 1125, 1138 (2d Cir. 1989) ("Here, although [the defendant] did not affirmatively state that he wished to confess, he nodded his head and said 'yes' when asked if he understood his rights."). While a defendant's "mere silence is not enough" to show waiver, the Supreme Court has made it clear that waiver may be inferred from "silence, coupled with an understanding of [the defendant's] rights and a course of conduct indicating waiver." *Butler*, 441 U.S. at 373.

Here, both Detectives Twomey and Hanna testified credibly that Mr. Rivera indicated after being read his rights that he was willing to speak with the officers. And, in fact, he did speak with the officers, never asking for a lawyer or to stop the interrogation, even though he was aware, both from Detective Twomey's recitation of his rights and from his prior interrogation by New Haven police, that he had the right to an attorney and the right to remain silent. *See, e.g., Spencer*, 995 F.2d at 11-12*; Scarpa*, 897 F.2d at 66-69; *Hall*, 724 F.2d at 1060. In short, Mr. Rivera's actions and words after being advised of his rights confirm his voluntary waiver of his rights.

Second, Mr. Rivera refused to sign the waiver and consent form and refused to place his initials on the form next the list of rights. A refusal to sign a consent form might suggest that a defendant does not intend to waive his rights. But it does not invariably so indicate. *Boston*, 508 F.2d at 1175. As the Second Circuit has held on more than one occasion, a refusal to sign a consent form, standing alone, does not preclude a valid and voluntary waiver of rights. *See, e.g., Spencer*, 995 F.2d at 11-12; *Boston*, 508 F.2d at 1175. Here, Detectives Twomey and Hanna explained that, despite Mr. Rivera's refusal to sign the form, he was willing to speak with the officers. The Court finds their testimony credible (this testimony was also confirmed in Detective Twomey's contemporaneous police report) and therefore, also finds that Mr. Rivera's refusal to sign the form

12

did not evidence an unwillingness to waive his rights.

Third,  Mr. Rivera says that he was apprehensive and suffered from anxiety.   While Mr. Rivera's  mental state might weigh against a finding of waiver, several other factors waive heavily in favor of finding a voluntary waiver.   *See Anderson*, 929 F.2d at 99 (whether a confession is the product of coercion depends upon the totality of circumstances).   Mr. Rivera was not handcuffed or subject to oppressive conditions or mental or physical abuse.   The interrogation was not protracted, but lasted only a little over two hours.   Moreover, it occurred almost an hour and a half after Mr. Rivera was arrested, thus giving Mr. Rivera "time to reflect upon his situation."  *Lynch*, 92 F.3d at 65.   The interrogation did not take place in the middle of the night but rather, in the morning hours.   And, even by Mr. Rivera's account, the police conduct in this case appears to have been exemplary. It is true that Detective Twomey apparently told Mr. Rivera that this was Mr. Rivera's chance to tell his side of the story, so that the victim did not portray him as a "monster."   However, "statements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive." *Ruggles*, 70 F.3d at 265.   Mr. Rivera is not a juvenile and is not illiterate.   He has no difficulty understanding English and appeared to the Court to be articulate and intelligent.   Moreover, Mr. Rivera was no newcomer to the criminal justice system and police interrogation in particular.   He was well aware that he had a choice in whether to speak to the police and chose to do so, whether it was to tell his side of the story or otherwise.   "Courts are not required to divine a defendant's motivation for speaking or acting as he did when there is no claim that governmental conduct coerced his decision."  *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998).

And while Mr. Rivera said that he suffered from anxiety, there was no testimony at the hearing describing the precise nature of Mr. Rivera's condition or indicating that this condition would

preclude him from voluntarily waiving his rights.  Additionally, on this matter, the Court finds more credible the testimony of Detective Twomey, who stated that Mr. Rivera did not appear to be suffering from the intense shaking that Mr. Rivera claimed he experienced at that time because of his anxiety disorder.  Moreover, "[t]he voluntariness of a waiver of [the] privilege [against self-incrimination] has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).  The Fifth Amendment is not concerned with psychological pressures to confess that emanate from sources other than official coercion. *Oregon v. Elstad*, 470 U.S. 298, 305 (1985).  Here, Mr. Rivera himself admits that the police did not threaten him or act improperly during the interrogation.

Considering the totality of circumstances, the Court finds that the Government has proved by a preponderance of the evidence that Mr. Rivera's confession was the "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Male Juvenile*, 121 F.3d at 41. His statements to Detectives Twomey and Hanna are, therefore, admissible.

### III.

The Court DENIES the Motion to Suppress Defendant's Statements [doc. # 51].


IT IS SO ORDERED,


/s/ _____Mark R. Kravitz_____
United States District Judge


Dated at New Haven, Connecticut: **July 13, 2006**

14