UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:05CR261(MRK) |
| CARLOS RIVERA | : | October 6, 2006 |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

### Introduction

On July 11, 2006, a jury returned a verdict of guilty against Carlos Rivera on all counts of the Second Superseding Indictment. By Ruling and Order filed September 15, 2006, the Court denied the defendant's motion for judgment of acquittal or for a new trial on Count Four, which charged production of child pornography in violation of 18 U.S.C. § 2251(a). As calculated in the Presentence Report, Mr. Rivera would face an extremely harsh advisory Guidelines range of 30 years to life on these convictions even absent the application of a Draconian mandatory sentence of life imprisonment on Count Four under 18 U.S.C. § 3559(e). PSR ¶¶ 86-87. The Presentence Report recommends sentencing Mr. Rivera as a second offender under 18 U.S.C. § 3559(e) because of the qualifying nature of the offense alleged in Count Four and because of a qualifying prior conviction of first degree sexual assault involving a minor victim. ¶¶ 60, 86. Absent this apparently applicable mandatory life sentence, the defendant would address at length the factors under 18 U.S.C. § 3553(a) as they pertain to sentencing in this case. Due to the restriction on the Court's sentencing authority, however, the defendant submits this memorandum to address and to preserve objections to the recommended application of the mandatory life sentence provision under 18 U.S.C. § 3559(e), and to urge the Court, should it sustain one of the objections, to tailor a sentence that is sufficient but not greater than needed to achieve the purposes of sentencing as codified at 18 U.S.C. § 3553(a).

### A.     Sentencing Post-Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court declared the Sentencing Guidelines advisory but required sentencing courts to consider them in "tailoring" a sentence to fit the particular defendant and the offense of conviction. Now, as before Booker, sentencing courts are

- 2 -

expected to impose a sentence "sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [18 U.S.C. § 3553(a)]". These purposes are:

> (2) the need for the sentence imposed -
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). This focus on the individual defendant was often undercut, prior to Booker, by the mandate generally to "impose a sentence of the kind, and within the range referred to in [the Guidelines]." 18 U.S.C. § 3553(b). Even after Booker that individualized focus and consideration, essential to a fair and just sentence, is eliminated altogether by a mandatory minimum sentence, such as the sentence of life imprisonment that may apply to one of the offenses of conviction here.

In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Second Circuit reviewed Booker and explained that "[t]he Supreme Court's decision in Booker/Fanfan significantly altered the sentencing regime that has existed since the Guidelines became effective on November 1, 1987[,]" id. at 108, and that "[t]he most significant aspect of the [Booker/Fanfan] Remedy Opinion is the excision of subsection 3553(b)(1), with the result that the use of the Guidelines to select a sentence is no longer mandatory . . . ." Id. at 110 (emphasis added). Under 18 U.S.C. § 3553(a), the sentencing judge must consider enumerated factors, including the Guidelines. Id. at 110. The statutory duty to "consider" the Guidelines means that "a sentencing judge will normally have to determine the applicable Guidelines range[,]" and "[t]he applicable Guidelines range is normally to be determined in the same manner as before Booker/Fanfan." Id. at 111. While the sentencing judge must determine the Guidelines range in order to "consider" it, Crosby expressly declined to "determine what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the

- 3 -

applicable Guidelines range." Id. at 113.  What the sentencing court must do, then, is "consider the Guidelines and all of the other factors listed in section 3553(a)." Id. (emphasis added).  Ultimately, after considering the relevant factors in light of the principle that "the Guidelines are no longer mandatory[,]" the sentencing judge must decide "whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." Id.  If the Court concludes that a non-Guidelines sentence will fulfill the statutory purposes of sentencing, it must state on the record and in writing its reasons for doing so.  United States v. Rattoballi, 452 F.3d 127 (2d Cir. 2006).

The Second Circuit recently again addressed the authority and responsibility of a sentencing court in the post-Booker era.  In United States v. Jones, 460 F.3d 191 (2d Cir. 2006), the government challenged a non-Guidelines sentence on the grounds, inter alia, that the reasons given were disfavored under the Guidelines and the judge had relied upon a subjective assessment.  The Second Circuit rejected these arguments, noting first:

> With the entire Guidelines scheme rendered advisory by the Supreme Court's decision in Booker, the Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated guidelines ranges themselves.  Of course, a sentencing judge's obligation to consider" the Guidelines, see 18 U.S.C. § 3553(a)(4), along with the other relevant factors listed in section 3553(a), see United States v. Canova, 412 F.3d 331, 350 (2d Cir. 2005), includes the obligation to consider the Commission's relevant policy statements as well as the calculated Guidelines range.  But "consideration" does not mean mandatory adherence.

Id. at 194.  It then discussed the permissible role of subjectivity in sentencing:

> Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.  That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness.

Id.

As a factor to be considered in fashioning a sentence that would be sufficient but not greater

- 4 -

than needed to achieve the statutory purposes of sentencing, absent application of a mandatory life sentence on Count Four, the Sentencing Guidelines provide an imprisonment range of 360 months to life.  PSR ¶¶ 16-57, 87.  This factor, like the statutory factors under 18 U.S.C. § 3553(a) that are generally of the utmost importance in tailoring a sufficient but not excessive sentence in a particular case, would be irrelevant, however, if the Court were required to sentence Mr. Rivera on Count Four to life imprisonment under the "two strikes" statute.

**B.**     **Count Four:  Production of Child Pornography**

Count Four of the Second Superseding Indictment charged Carlos Rivera with using a minor "to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct . . . ."  In relevant part, 18 U.S.C. § 2251(a) relies upon 18 U.S.C. § 2256(2)(A)(v) for the definition of "sexually explicit conduct" that was found by the jury, and by the Court in its post-trial ruling, to apply to four photographs (Exhibits 59(d), 59(f), 59(g) and 59(i)).  That cross-reference defines the prohibited "sexually explicit conduct" to include "lascivious exhibition of the genitals or pubic area of any person."  The evidence relating to this conviction is summarized in the Presentence Report.  The subject of the photographic depictions was a 16 year-old boy from Massachusetts who the defendant met on-line in a chat room.  The two agreed to meet for a sexual encounter, which they did several days later in Massachusetts.  The boy testified that he and the defendant went to a motel and the defendant took a shower.  As the defendant was showering, the boy said he undressed and joined the defendant in the shower, and then lay naked on a bed as the defendant took several photographs of him.  The two then engaged in consensual sexual relations.  No coercion or force was used by the defendant, and it was not unlawful under Massachusetts law for them to engage in sexual relations.  The four photographs found by the jury to constitute depictions of sexually explicit conduct showed the boy lying naked with his genitals, to varying degrees, exposed and visible.  The photographs did not depict sexual activity itself.  As noted above, the Court denied the defendant's post-trial motion for judgment of acquittal and found that "a rational jury could find that these images qualify as lascivious exhibitions."  Ruling and Order at 6.  The circumstances relating to the taking of the photographs would

- 5 -

be a factor relevant to tailoring an appropriate sentence on this offense if the Court's sentencing authority were not preempted by statute. Accordingly, the Court must decide if 18 U.S.C. 3559(e) applies and, if so, whether that application would violate Mr. Rivera's constitutional rights.

Under 18 U.S.C. § 3559(e)(1), "[a] person who is convicted of a <u>Federal sex offense</u> in which a minor is the victim, shall be sentenced to life imprisonment if the person has a <u>prior sex conviction in which a minor was the victim</u>[.]" (emphasis added). For purposes of this statute, "the term 'minor' means an individual who has not attained the age of 17 years[.]" 18 U.S.C. § 3559(e)(2)(D). Section 3559(e)(2)(A) defines "Federal sex offense" to include an offense under Section 2251, as was alleged in Count Four in the Second Superseding Indictment. "Prior sex conviction" is "defined" as "a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense[.]" 18 U.S.C. § 3559(e)(2)(C). The application of the mandatory life sentencing provision turns, therefore, on the question of whether Carlos Rivera had been convicted of a qualifying "State sex offense" before committing the instant offense of production of child pornography.

What constitutes a "State sex offense" largely incorporates the definition of "Federal sex offense," and the two definitions are set forth below in full:

> (A) the term "Federal sex offense" means an offense under section 2241 (relating to aggravated sexual abuse), 2242 (relating to sexual abuse), 2244(a)(1) (relating to abusive sexual contact), 2245 (relating to sexual abuse resulting in death), 2251 (relating to sexual exploitation of children), 2251A (relating to selling or buying of children), 2422(b) (relating to coercion and enticement of a minor into prostitution), or 2423(a) (relating to transportation of minors);

> (B) the term "State sex offense" means an offense under State law that is punishable by more than one year in prison and consists of conduct that would be a Federal sex offense if, to the extent or in the manner specified in the applicable provision of this title –

>> (i) the offense involved interstate or foreign commerce, or the use of the mails; or

>> (ii) the conduct occurred in any commonwealth, territory, or possession of the United States, within the special maritime and territorial jurisdiction of the United states, in a Federal prison, on any land or building owned by, leased to, or otherwise used by or under the control of the Government of the United States, or in the Indian country (as defined in section 1151).

- 6 -

18 U.S.C. §§ 3559(e)(2)(A), (B).  These definitions, nearly impenetrable to a lawyer and certainly unfathomable to a lay person, seem to classify prior state convictions as qualifying "prior sex convictions" if the conduct underlying the state conviction would have violated any of the enumerated federal statutes had the federal jurisdictional element been present.  Accordingly, the Court must analyze the defendant's prior state conviction to determine if it "consists of conduct that would be [one of the specified] Federal sex offense[s]." 18 U.S.C. § 3559(e)(2)(B).

In recommending that the Court sentence Carlos Rivera to life imprisonment as a second offender, the Presentence Report relies upon two supporting documents:  an arrest report and the transcript of the defendant's guilty plea colloquy.  PSR ¶ 60.  Generally, however, for purposes of enhancing a sentence based upon a prior conviction that is asserted to be a qualifying predicate offense, sentencing courts may not consider police reports and must confine their inquiry to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  Shepard v. United States, 544 U.S. 13, 16 (2005).  Accordingly, this Court should not consider the information presented in the Presentence Report derived from the arrest report, and should confine its examination to the only other document relating to Mr. Rivera's prior conviction - - the transcript of the plea colloquy.  (A copy of the transcript is attached hereto as Exhibit A.)

According to that transcript, on March 19, 1996, Carlos Rivera pled guilty at Superior Court in New Haven to one count of sexual assault in the first degree, in violation of Section 53a-70 of the Connecticut General Statutes.  Ex. A at 5.  The judge asked if the State was proceeding under subsection "A-1" and the prosecutor said yes.  Ex. A at 6.  As the factual basis for the charge, the prosecutor stated:

> MS. WIEDERHOLD:  Yes, your Honor.  The factual basis for the plea is as follows:  That in February of 1994, New Haven Police Department became involved in an investigation which resulted in them interviewing the complaining witness in this case, a young woman by the name of L who was fifteen years old at the time.  She complained to the New Haven Police Department that the defendant who had resided with her at one time had had sexual intercourse with her on a day back

- 7 -

> in 19 – actually 1991, when she was twelve – eleven to twelve years old.
> The precise date was not able to be stated, but the time period was
> narrowed to this period of time when the defendant and the complaining
> witness, L, were residing together.  There was actual sexual intercourse
> and it was against her will.

Ex. A. at 5.  The judge then advised Mr. Rivera that a person is guilty of sexual assault in the first

degree "when such person compels another person to engage in sexual intercourse by the use of force

against such other person or by the threat of use of force against such other person which reasonably

causes the person to fear physical injury."  Ex. A at 8.  After a colloquy regarding the rights that

Mr. Rivera would be waiving by pleading guilty, the judge asked Mr. Rivera, "Was the prosecutor's

summary of what happened, when she just reviewed the police report there, was that a substantially

correct statement of what happened?"  Ex. A at 9.  Mr. Rivera answered with a simple "yes."  Ex. A

at 9.  Thus, the transcript of the plea establishes that the short statement by the prosecutor, set forth

above, was "substantially correct."  Also, although the transcript includes a statement that the State was

proceeding under subsection A-1 of section 53a-70, Ex. A at 5-6, there is no other court record showing

the specific charge that had been filed against Mr. Rivera and to which he pled.

Absent a reliable basis for finding that the conviction was to subsection (a)(1) of the statute,

which is not codified in the manner referred to in the transcript as subsection A-1, this Court would

have to find that the conviction was to section 53a-70(a) generally, which included subsections that did

not include a minor victim as an element and, therefore, could have been violated without committing

acts that necessarily would have constituted one of the specified "Federal sex offenses."  Moreover,

while Mr. Rivera acknowledged the statement of facts offered by the State at the change of plea was

"substantially correct," the age of the victim was not an essential element of the offense and the

transcript should not be read as an admission by him of that aspect of the State's case.  Accordingly,

that record of the guilty plea does not provide the requisite basis for a finding here that the conviction

qualifies as a "Federal sex offense."

Assuming _arguendo_ that the Court finds that the documentation regarding Mr. Rivera's prior

conviction establishes that he qualifies for sentencing under 18 U.S.C. § 3559(e), the issue arises as to

the constitutional validity of punishing him on the basis of a fact, the prior qualifying conviction, that was neither charged in the indictment by the grand jury nor found at trial by the petit jury. In raising this issue, the defendant recognizes that this Court does not write on a clean slate and is constrained by controlling law to find that the prior conviction need not be charged or found by a jury. See Booker v. United States, 543 U.S. 220, 244 (2005); Almendarez-Torres v. United States, 523 U.S. 224 (1998); United States v. Snow, ___ F. 3d ___, 2006 WL 2529470 *6 (2d Cir. 2006); United States v. Snype, 441 F. 3d 119, 148 (2d Cir. 2006). The validity of the prior conviction exception to the rule that facts essential to the determination of a sentence must, under the Fifth and Sixth Amendments, be alleged in the charging document and found by the jury has been cast into serious doubt. See Shepard v. United States, 544 U.S. 13, 28 (2005)(Thomas, J., concurring). As Justice Thomas explained, "The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almendarez-Torres[.]" Id. (Emphasis added). This case squarely presents both the issue of the  validity of the Almendarez-Torres rule and the need to reconsider that flawed rule. Because of a penalty provision that would not, due to its lack of clarity and its complete separation from the statute creating the underlying federal offense, have put any reasonable person on notice of the mandatory life sentence that must be imposed after various federal criminal offenses if they occur after certain federal or state convictions, Carlos Rivera faces a pre-ordained mandatory sentence of life rather than an individualized sentence fashioned by the Court to fulfill the statutory objectives of sentencing with due consideration of the offenses themselves and the offender himself. The significance of this issue does not, of course, allow this Court to reject controlling precedent, and the defendant raises the point here to preserve it for appellate review.

## Conclusion

The jury in this case convicted Carlos Rivera of five serious offenses, and the Court undoubtedly will find, after careful consideration of the factors codified at 18 U.S.C. § 3553(a), that a lengthy sentence of imprisonment is needed to achieve those purposes, primarily to reflect the

- 9 -

seriousness of the offenses and to incapacitate the defendant and thereby to protect the public.  The accomplishment of those objectives, however, does not require sentencing this 36-year-old defendant, with his own history of being victimized with resulting emotional problems that were never effectively addressed, to imprisonment for the remainder of his life.  Should the Court find that the record does not establish that Mr. Rivera is a second offender subject to the penalty prescribed at 18 U.S.C. § 3559(e), he urges the Court, after giving full consideration to the various purposes of sentencing and to the Guidelines that would establish an advisory sentencing range of 360 months to life imprisonment, to find that a sentence at or below the low end of the Guidelines range would be sufficient but not greater than needed to justly punish Mr. Rivera and to protect the public.

Respectfully submitted,

CARLOS RIVERA

THOMAS G. DENNIS
FEDERAL DEFENDER

Dated:  October 6, 2006

_____/s/_____

Paul F. Thomas
Asst. Federal Defender
2 Whitney Ave., Suite 300
New Haven, CT 06510
Bar No. ct01724
(203) 498-4200
Email: paul.thomas@fd.org

- 10 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2006, a copy of the foregoing DEFENDANT'S MEMORANDUM IN AID OF SENTENCING was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Paul F. Thomas
ct01724
Office of the Federal Defender
2 Whitney Ave, Suite 300
New Haven, CT 06510
Phone: (203) 498-4200
Fax: (203) 498-4207
Email: paul.thomas@fd.org



# EXHIBIT A

No.    CR94-0390171-T

STATE OF CONNECTICUT              *        SUPERIOR COURT

VS.                               *        AT NEW HAVEN

CARLOS RIVERA                     *        March 19, 1996


BEFORE:  The Honorable Robert J. Devlin


APPEARANCES:

         FOR THE PLAINTIFF:

         Cecilia B. Wiederhold, Esq.
         Assistant State's Attorney
         235 Church Street
         New Haven, Connecticut    06510

         FOR THE DEFENDANT:

         Thomas M. Conroy, Esq.
         685 Boston Post Road
         Madison, Connecticut    06443




                              Robin L. Kolodecik
                              Court Recording Monitor

2

THE COURT:  This is the matter of State against Carlos Rivera.  It's my understanding from speaking with Judge Hadden that the parties have reached an agreement on the matter.

MS. WIEDERHOLD:  Yes, your Honor.  The matter was referred to Judge Hadden for trial and we did go through the jury selection process, but in deference to the complaining witness' desire not to have to testify in Court, we've spent this morning discussing a plea--a resolution of the case through a plea agreement, which would involve Mr. Rivera pleading guilty at this time to one count of sexual assault in the first degree and the State recommending to the Court that he receive a sentence of ten years, execution suspended after two, and a period of probation of five years.  We would be asking for a presentence investigation report, but we're asking for the Court to release the defendant on his own recognizance pending the presentence investigation report since it's not anticipated that--he has served the two years, your Honor, it's basically a time served sentence.  This is completely in accordance with the wishes of the victim in the case.  She is not present in Court, but her mother is.  I've spent quite a bit of time discussing the matter with her, and I feel that this is the fairest possible resolution of the case.

THE COURT:  Okay.  This is the mother who's in Court here?

MS. WIEDERHOLD:  Yes.

3

THE COURT:  Ma'am, could you just step forward for a minute?

MS. RIVERA:  Yes.

MS. WIEDERHOLD:  Your Honor, this is Ada Rivera, and she is the mother of the complaining witness who's referred to as L in the long form information.

THE COURT:  Okay.  Ms. Rivera, did you understand what Attorney Wiederhold just told me just a minute ago?

MS. WIEDERHOLD:  Did you understand--were you listening when I explained to the Judge--

MS. RIVERA:  Yeah, but I couldn't hear some--

THE COURT:  Okay.  Do you speak English okay?

MS. RIVERA:  Yes, I do.

THE COURT:  All right.  What she just told me was this, that the State and Mr. Rivera's lawyer have reached an agreement, which would involve Mr. Rivera entering a plea to one criminal charge and the State then recommending that the Court impose a sentence of ten years, suspended after two years, which would basically mean that Mr. Rivera will be released today, come back to Court in a month and a half or so for sentencing and then receive a sentence which would basically be a suspended sentence that would not require any additional time in jail other than the time he's already spent in jail on this case, all right?  Now, if Mr. Rivera does, in fact, plead guilty and after I ask him a number of questions I think that's a voluntary decision on his part and I accept that plea given this agreement, then you can't

4

really change that.  In other words, if you change your mind about this and think that it's--the sentence is not adequate or that a longer jail sentence should be, you know, imposed or something like that, it's sort of too late to do that after I've already accepted the plea, do you understand that?

MS. RIVERA:  Yes, I do.

THE COURT:  Okay.  Do you have any objections to this agreement or this case being ended in the way that we've just discussed?

MS. RIVERA:  No, I don't.

THE COURT:  Okay.  All right.  And--okay--All right, then have you selected which count you'd like--thank you very much, ma'am, you may sit down.

MS. WIEDERHOLD:  It's the first count in the information.

THE COURT:  All right.

MS. WIEDERHOLD:  Also for the record, your Honor, Mrs. Rivera has been here with her daughter all morning so that they've had quite a bit of time to discuss the case.

THE COURT:  Okay.

MS. WIEDERHOLD:  And the disposition.

THE COURT:  All right.  Please put Mr. Rivera to plea on count one.

THE CLERK:  Carlos Rivera, how old are you?

MR. RIVERA:  I'm twenty-five.

THE CLERK:  What is your date of birth?

5

MR. RIVERA:  June 16, 1970.

THE CLERK:  Where were you born?

MR. RIVERA:  Puerto Rico.

THE CLERK:  What is your address?

MR. RIVERA:  66 Station Court, New Haven.

THE CLERK:  Carlos Rivera, in docket number 0390171, you are charged in the information in the first count with sexual assault in the first degree in violation of 53a-70 of the Connecticut General Statutes.  What is your plea, guilty or not guilty?

MR. RIVERA:  Guilty.

THE COURT:  Okay.  Would you please summarize the facts supporting that charge?

MS. WIEDERHOLD:  Yes, your Honor.  The factual basis for the plea is as follows:  That in February of 1994, New Haven Police Department became involved in an investigation which resulted in them interviewing the complaining witness in this case, a young woman by the name of L who was fifteen years old at the time.  She complained to the New Haven Police Department that the defendant who had resided with her at one time had had sexual intercourse with her on a day back in 19--actually 1991, when she was twelve--eleven to twelve years old.  The precise date was not able to be stated, but the time period was narrowed to this period of time when the defendant and the complaining witness, L, were residing together.  There was actual sexual intercourse and it was against her will.

6

THE COURT:  So that the subsection is, intercourse with someone who's under thirteen with the actor more than two years older, that's the subsection that the State is proceeding under or is it the compel--

MS. WIEDERHOLD:  No, it's the--

THE COURT:  A-1?

MS. WIEDERHOLD:  Yes.

THE COURT:  Okay.

MS. WIEDERHOLD:  Because this act predates that amendment, your Honor.

THE COURT:  All right.  Fine.  Okay.  Mr. Rivera, I'm going to ask you some questions about your plea.  Listen to my questions, answer them as best as you can.  First off, how old are you again?

MR. RIVERA:  Twenty-five.

THE COURT:  Twenty-five.  And how far did you go in school?

MR. RIVERA:  Third grade.

THE COURT:  Third grade.  All right.  Is that here in--is that in Puerto Rico or in the United States?

MR. RIVERA:  Puerto Rico.

THE COURT:  Puerto Rico, okay.  And prior to the time you were arrested, were you working?

MR. RIVERA:  Not really, no.

THE COURT:  Okay.  Have you had any jobs since you left school?

MR. RIVERA:  Yes.

7

THE COURT:  What sort of work have you done?

MR. RIVERA:  I worked at MacDonald's, I worked in manufacturing--factory--

THE COURT:  Factory work?

MR. RIVERA:  Yes.

THE COURT:  Okay.

MR. RIVERA:  And I worked as a dishwasher, too, and stock clerk.

THE COURT:  Okay.  Prior to coming into Court today, have you had any alcohol or drugs or medicine of any kind which interferes with your ability to understand what's happening here?

MR. RIVERA:  No, sir.

THE COURT:  Okay.  Have you had enough time to think about your decision to plead guilty to this charge?

MR. RIVERA:  Yes, sir.

THE COURT:  Have you talked with your lawyer about the nature of the charge and its essential elements and the evidence that the State claims it has to prove that you're guilty on this charge?

MR. RIVERA:  Yes.

THE COURT:  Are you satisfied with the legal advice you've received on this case?

MR. RIVERA:  Yes.

THE COURT:  Okay.  The charge that you've pleaded to, sexual assault in the first degree, a person is guilty of that offense when such person compels another person to

8

engage in sexual intercourse by the use of force against

such other person or by the threat of use of force against

such other person which reasonably causes the person to fear

physical injury.  It is a class B felony and it carries a

maximum sentence of twenty years imprisonment, one year of

which is mandatory and a maximum sentence of up to--or

rather a maximum fine of up to fifteen thousand dollars, do

you understand that, sir?

        MR. RIVERA:  Yes, sir.

        THE COURT:  All right.  Are you currently on

probation or parole out of any Court?

        MR. RIVERA:  Nope.

        THE COURT:  Do you understand that by pleading to

this charge, you're giving up some rights?  You could plead

not guilty.  You have pleaded not guilty.  You could

continue to plead not guilty and you could have a trial in

front of a Judge or a jury where the State would have to

prove that you were guilty beyond a reasonable doubt, do you

understand that?

        MR. RIVERA:  Yes, sir.

        THE COURT:  As a matter of fact, as you know, this

case was scheduled to be tried, a jury has been selected,

and the case was scheduled to start--actual jury trial

today, you understand that?

        MR. RIVERA:  Yes.

        THE COURT:  If I accept your guilty plea, those

jurors are going to be told to go home and there's not going

9

to be a trial on this case, do you understand that?

  MR. RIVERA:  Yes, I do, sir.

  THE COURT:  Okay.  If you had a trial, you'd have a right to the assistance of your lawyer, you'd be able to confront and cross examine any witness that was called against you, you'd be able to call witnesses yourself and to testify yourself if you wanted to, or you could chose to stay silent and nobody could make you testify or incriminate yourself, you could also present any legal or factual defenses that you might have to this charge, and in the event you were convicted you'd have a right to take an appeal, but you give up all those rights when you plead here today, do you understand that?

  MR. RIVERA:  Yes, I do, sir.

  THE COURT:  Is your plea voluntary and of your own free will?

  MR. RIVERA:  Yes, I do.

  THE COURT:  Okay.  Was the prosecutor's summary of what happened--well, has anybody forced you or threatened you in any way to get you to plead here?

  MR. RIVERA:  No, sir.

  THE COURT:  Was the prosecutor's summary of what happened, when she just reviewed the police report there, was that a substantially correct statement of what happened?

  MR. RIVERA:  Yes.

  THE COURT:  Okay.  The State has indicated that based on their evaluation of the case, the cooperation of

the victim and the attitude of the victim and the victim's mother, that they're prepared to recommend a sentence of ten years, suspended after two years, and a period of probation of five years.  Is that your understanding of the agreement that's been reached with the State's Attorney's Office and your lawyer?

MR. RIVERA:  Yes.

THE COURT:  Okay.  I'll tell you right now, Mr. Rivera, I think that's an inadequate sentence for--for what-- the conduct that is involved in this case.  On the other hand, I understand why the State's making that recommendation and in all likelihood I intend to accept it, probably with some stringent conditions of probation.  Do you, sir, understand that once I accept your plea on this charge, you're not allowed to take back your plea without permission of a Judge, do you understand that?

MR. RIVERA:  Yes.

THE COURT:  Okay.  And unless at the time of sentencing I don't feel that I can impose that sentence, in which case I'd let you withdraw your plea and plead not guilty again, but--but for that, that you're pretty much stuck with this plea after I accept it today, do you understand that?

MR. RIVERA:  Yes.

THE COURT:  All right.  If you are not a citizen of the United States, you should understand that conviction for a crime like this could have the consequences of your

deportation or exclusion from admission to the United States or denial of naturalization rights pursuant to the laws of the United States of America, do you understand that?

        MR. RIVERA:  Yes.

        THE COURT:  Other than that ten years, suspended after two years and five years of probation, has--and a recommendation that your bond be reduced today so that you are released on your own recognizance, has anybody promised you anything else to get you to plead here?

        MR. RIVERA:  Nope.

        THE COURT:  Okay.  Mr. Conroy, has the plea agreement as has been stated on the record comport with your understanding of the plea agreement?

        MR. CONROY:  Yes, your Honor.

        THE COURT:  All right.  Have you understood all of my questions, Mr. Rivera?

        MR. RIVERA:  Yes, I do, sir.

        THE COURT:  Okay.  Do you have any questions of your own?

        MR. RIVERA:  No, I don't.

        THE COURT:  Okay.  Either counsel know of any reason why I should not accept Mr. Rivera's plea?

        MS. WIEDERHOLD:  No, your Honor.

        MR. CONROY:  No.

        THE COURT:  All right.  The plea is found to be voluntary and understandably made with the assistance of competent counsel.  There is a factual basis for the plea.

12

The plea is accepted.  A finding of guilty may enter on sexual assault in the first degree.  A presentence report is ordered for Friday, May 3rd.  May 3rd will be the next Court date on this matter.  I would suspect that sentencing will occur at that time.  In connection with the agreement of the parties, the defendant's bond is reduced to a written promise to appear.  Unless there's some--are there any other pending charges or counts any place?

MS. WIEDERHOLD:  No, your Honor.

THE COURT:  Okay.  Then a PTA is ordered and Mr. Rivera should be released today.  All right?

MS. WIEDERHOLD:  Thank you, your Honor.

*     *     *

13

No.   CR94-0390171-T

STATE OF CONNECTICUT            *            SUPERIOR COURT

VS.                             *            AT NEW HAVEN

CARLOS RIVERA                   *            March 19, 1996


C E R T I F I C A T I O N

I, Robin L. Kolodecik, hereby certify that the foregoing is a true and correct transcript of the tape of the agreement given at the hearing in the above-entitled case heard before the Honorable Robert J. Devlin in Superior Court for New Haven County, Connecticut, on the 19th day of March, 1996.

Dated this 12th day of June, 1996.


Robin L. Kolodecik
Court Recording Monitor